UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 11 C 1880 |
| | ) | |
| PARTHA GHOSH, M.D. et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motions of Defendants Dr. Parthasarathi Ghosh ("Dr. Ghosh"), Dr. Liping Zhang ("Dr. Zhang"), Dr. Evaristo Aguinaldo ("Dr. Aguinaldo"), Latonya Williams ("Williams"), Terry McCann ("McCann"), Frank Shaw ("Shaw"), and Wexford Health Sources, Inc. ("Wexford") (collectively, "Defendants") to dismiss Plaintiff Eric Watkins' ("Watkins") complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Dr. Aguinaldo's and Shaw's motions to dismiss are granted, and Dr. Ghosh's, Dr. Zhang's, Williams', McCann's, and Wexford's motions to dismiss are denied.

In February 2006, Watkins, an inmate at the Stateville Correctional Center ("Stateville"), was using gym equipment to lift weights when a cable snapped. The machine's weights dropped to the floor with such force that he fell backwards, injuring his back. Although he was in excruciating pain and unable to stand upright, an unnamed individual denied his request for medical attention. Watkins limped back to his cell without being evaluated by the prison's health care unit.

Between the date of his injury and March 11, 2006, Watkins sent three letters to Dr. Aguinaldo, a staff physician at Stateville, seeking medical treatment. Watkins eventually saw Dr. Aguinaldo on an unspecified date, but Dr. Aguinaldo did not take Watkins' complaints seriously.

Following his visit with Dr. Aguinaldo, Watkins wrote a letter to Dr. Ghosh, the prison's medical director. In this letter, Watkins apprised Dr. Ghosh of his unsatisfactory visit with Dr. Aguinaldo and detailed his symptoms, which included radiating pain, numbness in his left foot, and a limited range of motion. Watkins' cellmate delivered the letter to Dr. Ghosh, who read the letter and remarked, "There's nothing wrong with [Watkins'] back." Thereafter, on March 14, 2006, Watkins filed

---

[1] For the purposes of a motion to dismiss, the Court accepts all well-pleaded allegations in the complaint as true. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009).

his first grievance with the prison administration regarding the lack of medical treatment for his condition.

Approximately four months after his injury, on June 12, 2006, Watkins was taken to the University of Illinois Medical Center ("UIC Medical Center") for an MRI. The MRI revealed that Watkins suffered from a herniated disk, degenerative disk disease, and sacral dysraphism. The hospital faxed these findings to Dr. Ghosh, who assured Watkins that the results of the test were "negative." Dr. Ghosh promised to give Watkins ibuprofen for his pain, but did not do so. Over the next few months, Watkins sent several letters to Dr. Ghosh describing his symptoms and requesting treatment and the MRI results. These letters went unanswered.

In May and June 2007, nearly a year after receiving the MRI, Watkins sent two more letters to Dr. Ghosh requesting the test results and indicating that his condition seemed to be worsening. Dr. Ghosh neither responded to the letters nor provided any treatment.

On July 28, 2007, Watkins wrote a letter to Williams, a physician's assistant, stating that he had blurry vision, severe headaches, back pain, and liquid accruing near his spine. Williams responded by scheduling him for a "sick call." At the ensuing appointment, Watkins inquired as to the results of his MRI. Williams searched through his file and indicated that she could not find any records relating to the MRI. She

promised to continue searching for the results and to forward Watkins her findings. However, she never sent him the results and failed to provide any other treatment.

On September 16, 2008, Dr. Ghosh informed Watkins that the MRI revealed he had a herniated disk. Dr. Ghosh did not disclose that Watkins also had degenerative disk disease and did not provide any treatment for his pain.

In November 2008, Watkins filed an emergency grievance with the prison administration. McCann refused to consider the grievance as qualifying for emergency consideration, and Watkins re-submitted the grievance through the normal grievance channels. This grievance was routed to Dr. Zhang in the health care unit for a response. Dr. Zhang, who had never personally examined Watkins, reviewed his medical records and determined that he had received proper care. Shaw, the assistant warden at Stateville, reviewed Dr. Zhang's report and denied the grievance at the institutional level. Watkins appealed this decision to the Administrative Review Board ("ARB"), which denied the grievance in June 2009.

On April 26, 2010, Watkins wrote another letter to Dr. Ghosh. Watkins described his leg and back pains and requested a back brace, a support mattress, and a low gallery permit. He received no response.

On June 30, 2011, Watkins filed his amended complaint with this Court pursuant to 42 U.S.C. § 1983, alleging that Defendants failed to provide him medical treatment

in violation of the Eighth Amendment proscription against cruel and unusual punishment. The Defendants now move to dismiss Watkins' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss is used to test the legal sufficiency of a complaint. To state a claim, the allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, a plaintiff must provide enough factual support to raise his right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice;" rather, a claim must provide sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 555-56). In ruling on a motion to dismiss, a court accepts all well-pleaded facts and allegations as true and draws all reasonable inferences in the plaintiff's favor. *Justice*, 577 F.3d at 771. Moreover, a court must construe *pro se* complaints liberally and hold them to a less stringent standard than formal pleadings drafted by attorneys. *Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009).

## DISCUSSION[2]

Watkins alleges that the Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Prior to examining the sufficiency of these allegations, we will consider whether Watkins' claims are barred by the statute of limitations and whether he has properly exhausted his administrative remedies prior to filing this lawsuit. Both the failure to exhaust and the statute of limitations are affirmative defenses that a prisoner need not anticipate in his complaint. *See Walker v. Thompson*, 288 F.3d 1005, 1010 (7th Cir. 2002); *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). However, a court may evaluate the merits of an affirmative defense at the pleadings stage "if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks*, 578 F.3d at 579 (quoting *United States v. Lewis,* 411 F.3d 838, 842 (7th Cir. 2005)); *see Walker*, 288 F.3d at 1009 (7th Cir. 2002) ("[W]hen the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit.").

---

[2] Many of Watkins' briefs exceed the fifteen page limit mandated by Local Rule 7.1. *See* N.D. Ill. L.R. 7.1. Because Watkins is proceeding *pro se*, we considered his briefs in their entirety. However, the Court may strike any future submissions that do not comply with the local rules.

## I.    Statute of Limitations

Defendants Dr. Ghosh, Dr. Aguinaldo, Dr. Zhang, Williams, and Wexford (the "Medical Defendants") maintain that Watkins' claims are untimely because they fall outside the statute of limitations.  Because the relevant dates of Watkins' claims are unambiguously set forth in his complaint, we examine the merits of the Medical Defendants' statute of limitations defense.

The statute of limitations for Section 1983 claims is "that which the State provides for personal injury torts."  *Wallace v. Kato,* 549 U.S. 384, 387 (2007). Because Watkins' cause of action arose in Illinois, the state's two-year statute of limitations applies.  *See* 735 ILCS 5/13-202.  While the statute of limitations is determined by reference to state law, the accrual date for Section 1983 claims is determined by federal law.  *Wallace*, 549 U.S. at 388; *Kelly v. City of Chi.,* 4 F.3d 509, 511 (7th Cir. 1993).  We must therefore determine when Watkins' claims accrued.

The Medical Defendants contend that Watkins' claims accrued on the date of his injury, nearly five years before he filed the present action.  However, under the continuing violation doctrine, where a series of events injures a plaintiff, he can "reach back" to the beginning of the wrong, "even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *Heard v. Sheahan,*

253 F.3d 316, 319 (7th Cir. 2001). The continuing violation accrues upon treatment or release from custody. *Jervis v. Mitcheff*, 258 F. App'x 3, 5-6 (7th Cir. 2007); *see also Heard*, 253 F.3d at 319 (explaining that a series of violations continues "for as long as the defendant has the power to do something about [the prisoner's] condition").

While Watkins' injury occurred in 2006, he has sufficiently alleged an ongoing denial of medical care that continued through 2010. During this period, Watkins alleges nearly two dozen separate instances in which his pleas for treatment were ignored. It would be unreasonable to expect him to file a separate lawsuit for each of these requests. This is precisely the type of case in which the continuing violation doctrine was intended to apply. Even though Watkins had not requested medical treatment from Dr. Aguinaldo since 2006 or Williams since 2007, his complaint sufficiently alleges that both Dr. Aguinaldo and Williams were in a position to provide treatment but failed to do so. Every day that they ignored his requests "marked a fresh infliction of punishment that caused the statute of limitations to start running anew." *Heard*, 253 F.3d at 318.

Relying exclusively on *Wilson v. Groze*, No. 09 C 7487, 2011 WL 3290289 (N.D. Ill. Aug. 1, 2011), the Medical Defendants nevertheless contend that Watkins received treatment in 2006 when he was sent to the UIC Medical Center for an MRI. However, the facts in *Wilson* are readily distinguishable from those underlying Watkins'

claims.  In *Wilson*, the plaintiff was referred to the UIC Medical Center for treatment of an uncontrolled erection.  *Id.* at *2.  The plaintiff spent four days at the UIC Medical Center and underwent five surgeries to treat his condition.  *Id.*  In stark contrast, Watkins went to the UIC Medical Center for a diagnostic exam rather than treatment. Moreover, he alleges that he never received treatment despite the Medical Defendants' awareness that the MRI results revealed that he suffered from a herniated disk, degenerative disk disease, and sacral dysraphism.  Watkins has sufficiently alleged that the Medical Defendants engaged in a continuing violation of his Eighth Amendment Rights, and the statute of limitations does not bar his claims.

Because this is the sole basis for Dr. Ghosh's motion to dismiss, his motion is denied.

## II.     Failure to Exhaust Administrative Remedies

Prior to seeking relief from a court on a Section 1983 claim, a plaintiff must exhaust all available administrative remedies.  42 U.S.C. § 1997e(a); *Woodford v. Ngo,* 548 U.S. 81, 84 (2006); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).  While the failure to exhaust is an affirmative defense and is thus not generally examined at the pleadings stage, a court may address the merits of such a defense in a motion to dismiss if the validity of the defense is evident from the face of the complaint.  *Thomas v. Kalu*, 218 F. App'x 509, 512 (7th Cir. 2007).  Here, Watkins has attached copies of his

grievances to his complaint, and the parties do not dispute any of the facts surrounding these grievances. The only point of contention is whether the grievances, as submitted, complied with the administrative requirements. Therefore, we will consider whether Watkins properly exhausted his administrative remedies.[3]

Sections 504.810 and 504.850 of the Illinois Administrative Code set forth the grievance procedures for Illinois. 20 Ill. Admin. Code §§ 504.810, 504.850. Section 504.810(b) requires an inmate to file a grievance with prison administration that includes "the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code § 504.810(b). If an inmate is unable to ascertain the particular identity of an official, he "must include as much descriptive information about the individual as possible." *Id.*

The Seventh Circuit has adopted a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *see Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement is relaxed only when a plaintiff is unable to ascertain which prison employee is responsible for his injuries. 20 Ill. Admin. Code §504.810(b); *Glick v. Walker,* 385 F. App'x 579, 582 (7th Cir. 2010).

---

[3] The Seventh Circuit has held that a district court should first conduct a hearing to determine whether a plaintiff has exhausted his administrative remedies. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). However, as there are no factual disputes surrounding the grievances, a hearing is unnecessary.

Dr. Aguinaldo and Dr. Zhang contend that they should be dismissed as defendants because Watkins did not name them in his grievances. Watkins only identified Dr. Ghosh and Williams in his grievances, though he generally included allegations against the entire health care unit.

There is no doubt that Watkins was aware of Dr. Aguinaldo's identity prior to filing his grievances. Watkins sent a letter directly to Dr. Aguinaldo before filing his first grievance in 2006. He also sent a letter to Dr. Ghosh identifying Dr. Aguinaldo by name before submitting his second grievance in 2008. Though Watkins was aware of Dr. Aguinaldo's identity prior to filing his grievances with prison administration, he failed to name Dr. Aguinaldo in those grievances. Watkins has not provided any explanation for this shortcoming. Watkins has therefore failed to strictly comply with the grievance procedures outlined by Section 504.810(b), and Dr. Aguinaldo's motion to dismiss is granted.

However, Watkins has exhausted his administrative remedies as against Dr. Zhang. Prisoners need identify names "only to the extent practicable." *Glick*, 385 F. App'x at 582. It would have been impracticable, indeed impossible, for Watkins to include Dr. Zhang in his grievance, as his allegations against Dr. Zhang arise out of the manner in which Dr. Zhang addressed his grievance. When a prisoner's claim derives from the grievance procedure, it would be problematic to require him to file a second

grievance prior to seeking relief from the courts. If the denial of the second grievance gives rise to a constitutional violation, the inmate would be required to file a third grievance. The imposition of such a requirement could result in a never-ending cycle of grievances that would needlessly delay a prisoner's access to judicial relief. Because it would have been impracticable for Watkins to name Dr. Zhang in his grievance, Watkins has sufficiently exhausted his administrative remedies against Dr. Zhang.

Having resolved these preliminary matters, we now turn to Watkins' Eighth Amendment claims.

## III.    Eighth Amendment Claims

Prison officials violate the Eight Amendment if they are deliberately indifferent to a prisoner's serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). To succeed on a claim of deliberate indifference, a plaintiff must demonstrate that he suffers from an objectively serious medical condition and that a prison official was deliberately indifferent to that condition. *Farmer*, 511 U.S. at 834; *Sherrod*, 223 F.3d at 610. As the parties do not dispute that Watkins suffered from an objectively serious medical condition, our analysis is limited to whether the Defendants acted with deliberate indifference to this condition.

Deliberate indifference is a subjective standard. *Sherrod,* 223 F.3d at 610. Prison officials act with deliberate indifference if they know of "a substantial risk of harm to the inmate and disregard that risk." *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005). Additionally, prison officials must be personally involved in the alleged constitutional deprivation. *Minix v. Canarecci,* 597 F.3d 824, 833 (7th Cir. 2010). Generally, a finding of deliberate indifference is a fact-intensive assessment that cannot be resolved on a motion to dismiss. *See Sherrod,* 223 F.3d at 611 ("Whether a prison employee acted with deliberate indifference presents a question of fact.").

Defendants McCann, Shaw, Williams, and Dr. Zhang assert that they lacked sufficient personal involvement to be held liable under Section 1983. Alternatively, Williams and Dr. Zhang contend that Watkins has failed to sufficiently plead that their involvement in his medical care amounted to deliberate indifference. We now turn to their respective arguments.

## A.    Shaw

Watkins alleges that Shaw, Stateville's acting warden, improperly concurred with the findings of Dr. Zhang and the grievance officer who denied Watkins' 2008 grievance. The denial of a grievance "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011); *see George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling

- 13 -

against a prisoner on an administrative complaint does not cause or contribute to the violation."). Correctional officials may properly rely on the health care staff to assess an inmate's needs and to provide appropriate care and treatment. *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009).

Shaw's involvement in Watkins' care was limited to signing off on the grievance officer's report. This report incorporated Dr. Zhang's conclusion that Watkins had received appropriate care. Because Shaw relied on Dr. Zhang's findings, he was under no obligation to investigate further. Therefore, Shaw's motion to dismiss is granted.

### B.    McCann

Watkins alleges that McCann ignored his emergency grievances in 2008. A prisoner may request that a grievance be handled on an emergency basis by sending the grievance directly to the Chief Administrative Officer. 20 Ill. Admin. Code § 504.840. As discussed above, the denial of a grievance does not generally give rise to an Eighth Amendment violation. However, non-medical prison officials may become personally involved in an inmate's medical care by ignoring grievances that indicate a constitutional violation. *See Santiago v. Walls,* 599 F.3d 749, 758-759 (7th Cir. 2010); *see also Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) ("[N]on-medical officials can 'be chargeable with . . . deliberate indifference' where they have a reason to believe

(or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.") (internal quotation omitted).

Watkins maintains that at the time he submitted his emergency grievance, McCann was the Chief Administrative Officer of Stateville and ignored his grievance without conducting any investigation. The emergency grievance states with specificity that Watkins was not receiving treatment for his serious medical condition. Because the grievance was sent directly to McCann, we can infer that McCann had actual knowledge of Watkins' injuries and the ongoing denial of treatment for those injuries but failed to take action. Moreover, the grievance was never signed by McCann, which supports Watkins' allegations that McCann simply ignored his grievance. Therefore, Watkins has sufficiently alleged McCann's personal involvement, and McCann's motion to dismiss is denied.

### C.   Dr. Zhang

#### 1.   Personal Involvement

Watkins' claims against Dr. Zhang arise out of the manner in which she handled his 2008 grievance. Dr. Zhang authored a memorandum stating that she had reviewed Watkins' medical records and concluded that he was receiving proper care for his pain. Dr. Zhang contends that she lacked sufficient personal involvement in Watkins' medical care to give rise to a claim of deliberate indifference.

As discussed above, a plaintiff cannot state a claim based on the alleged mishandling of grievances by officials who did not cause or participate in the underlying conduct. *Owens,* 635 F.3d at 953. However, a prison official is personally liable under Section 1983 if he "know[s] about the constitutional deprivation and facilitates it, approves it, condones it, or turns a blind eye." *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1998). Direct participation is not necessary, though "there must at least be a showing that the [official] acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003) (citing *Kelly v. Mun. Courts of Marion Cnty.,* 97 F.3d 902, 909 (7th Cir. 1996)).

While Dr. Zhang never personally examined Watkins and was therefore not directly involved in his health care, Dr. Zhang conducted a review of Watkins' medical records, including the MRI results which showed a herniated disk, degenerative disk disease, and sacral dysraphism. Upon reviewing these records, Dr. Zhang concluded that Watkins had received proper treatment for his pain, even though Watkins had not received any treatment at all. Watkins has therefore sufficiently pleaded that Dr. Zhang had knowledge of the lack of treatment for his medical condition and that she facilitated, approved, condoned, or turned a blind eye to the ongoing denial of this lack of treatment by concluding that Watkins had received appropriate treatment. Watkins

- 16 -

has thus sufficiently alleged that Dr. Zhang was personally involved in the alleged constitutional violation.

### 2. Deliberate Indifference

Alternatively, Dr. Zhang contends that Watkins' allegations do not support an inference that she acted with deliberate indifference to a serious medical need. Dr. Zhang asserts that her memorandum constituted a medical judgment that is beyond the purview of the Eighth Amendment. *See Duckworth,* 532 F.3d at 679. However, deliberate indifference can be inferred when a treatment decision is "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Id*. (quoting *Norfleet v. Webster,* 439 F.3d 392, 396 (7th Cir. 2006)); *see Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011) ("A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances.") (internal citation omitted).

Watkins has alleged that Dr. Zhang reviewed his entire medical record and was therefore aware of the seriousness of his medical conditions and the associated lack of treatment but failed to take any corrective action. Whether Dr. Zhang's decision was so far afield of accepted professional standards must be explored through discovery.

Thus, at this stage of the proceedings, we conclude that Watkins has stated a plausible claim against Dr. Zhang.  Therefore, Dr. Zhang's motion to dismiss is denied.

### D.    Williams

Williams maintains that Watkins' allegations against her do not rise to the level of deliberate indifference.  To state a claim for deliberate indifference to a serious medical need, a plaintiff need only allege that a prison official knew of and disregarded an excessive risk to inmate health.  *Greeno*, 414 F.3d at 653.

Watkins' allegations are sufficient to state a claim against Williams.  Watkins sent Williams a letter, informing her that he suffered from headaches, dizziness, blurry vision, and pain, and that he could feel liquid amassing near his spine.  Williams responded to the letter by scheduling him for a medical visit.  During the visit, Williams examined Watkins' medical file, allowing for the reasonable inference that she was aware of Watkins' medical condition.  Moreover, Watkins informed Williams that he had undergone an MRI but was not yet made aware of the results, and Williams responded that she would look for the results and report them to Watkins.  Williams was informed of Watkins' symptoms and was notified that the hospital was in possession of MRI results that corroborated these symptoms, but failed to provide any treatment.  Therefore, Watkins has sufficiently alleged that Williams was deliberately indifferent to his medical needs.

### E.    Wexford

Wexford employs the Medical Defendants allegedly responsible for the violation of Watkins' Eighth Amendment rights. Because the doctrine of *respondeat superior* does not apply to actions filed under Section 1983, "a private corporation is not vicariously liable under Section 1983 for its employees' deprivations of others's civil rights." *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 (7th Cir. 2002) (internal quotation omitted).    However, a corporation can be held liable for deliberate indifference if it had "a policy or practice that caused the violation."    *Ambrose v. Puckett,* 198 F. App'x 537, 543 (7th Cir. 2006) (citing *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004)).    The corporate policy "must be the direct cause or moving force behind the constitutional violation."    *Woodward,* 368 F.3d at 927 (internal quotation omitted).

A plaintiff may establish a policy or practice by showing that his constitutional injury was caused by either: (1) the enforcement of an express policy; (2) a widespread practice that is so permanent and well-settled as to constitute a usage or custom with the force of law; or (3) a person with final policy-making authority. *Wragg v. Vill. of Thornton*, 604 F.3d 464, 468 (7th Cir. 2010).

In his complaint, Watkins generally alleges that Wexford maintains of policy of refusing to provide medical treatment for his condition, though these allegations are factually underdeveloped.  In his response to Wexford's motion to dismiss, Watkins

develops these allegations with greater particularity. A plaintiff's brief may clarify uncertainty surrounding the allegations in his complaint. *Pegram v. Herdrich*, 530 U.S. 211, 230 (2000). A court may consider the clarifying allegations provided in a brief if they are consistent with the complaint. *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 542 n.1 (7th Cir. 2008) (citing *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963-64 (7th Cir. 1992)). Because we find that the allegations in Watkins' complaint are consistent with those in his brief, we will consider and accept these allegations as true.

Watkins has sufficiently stated a claim of deliberate indifference by Wexford. Watkins alleges that Wexford, in an effort to cut costs, has a widespread practice of understaffing Stateville so that prisoners are unable to obtain the treatment that they require. Watkins also alleges that Wexford lacks a procedure for the treatment of degenerative disk disease, loss of disk height, and sacral dysraphism, and that Wexford further lacks medical personnel competent to treat these conditions. Rather than referring patients who suffer from these maladies to outside specialists, Wexford simply denies them treatment in an effort to cut costs. Finally, Watkins alleges that the policy-makers at Wexford are aware of the effects of these staffing deficiencies but fail to take corrective action. Therefore, Watkins has sufficiently alleged that Wexford maintained a policy that directly caused the underlying constitutional violation, and Wexford's motion to dismiss is denied.

**IV.    Official Capacity Claims**

As a final matter, Dr. Ghosh, Dr. Zhang, and Williams maintain that they cannot be sued in their official capacities under Section 1983.  Watkins concedes that Section 1983 does not authorize suits against state officials in their official capacity.  *See Will v. Mich Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Zambrano v. Reinert*, 291 F.3d 964, 976 (7th Cir. 2002).  Therefore, the Court dismisses any claims against Dr. Ghosh, Dr. Zhang, and Williams in their official capacities, though Watkins may proceed against these defendants in their individual capacities.

## CONCLUSION

In light of the foregoing, Dr. Aguinaldo's and Shaw's motions to dismiss are granted, and Dr. Ghosh's, Dr. Zhang's, Williams', McCann's, and Wexford's motions to dismiss are denied.  Any claims against Dr. Ghosh, Dr. Zhang, and Williams in their official capacity are dismissed.

Charles P. Kocoras
United States District Judge

Dated:   November 28, 2011