UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11 C 1880 |
| | ) | |
| PARTHA GHOSH M.D., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motions for summary judgment of Defendants Dr. Parthasarathi Ghosh ("Dr. Ghosh"), Terry L. McCann ("McCann"), Latonya Williams ("Williams"), Wexford Health Sources, Inc. ("Wexford"), and Dr. Liping Zhang ("Dr. Zhang") (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the following reasons, the Court grants summary judgment with respect to McCann and Dr. Zhang and denies summary judgment as to all other defendants.

## BACKGROUND

**I. Facts**

The following facts are taken from the parties' respective statements and exhibits filed pursuant to Northern District of Illinois Local Rule 56.1. The Court reviews each Local Rule 56.1 statement and disregards any argument, conclusion, or

assertion unsupported by the evidence in the record. The parties do not dispute the facts below unless otherwise noted.

This case arises out of the allegedly inadequate medical treatment by prison doctors and personnel. Plaintiff Eric Watkins ("Watkins") is an inmate at the Stateville Correctional Center ("Stateville"). While incarcerated at Stateville, Watkins received medical treatment from Wexford, a prison contractor. McCann was the warden of Stateville from August 2006 to March 2009. Dr. Ghosh was Medical Director at Stateville and a Wexford employee from June 2003 to March 2011. Williams, a physician's assistant, and Dr. Zhang, a staff physician, were also Wexford employees. Dr. Ghosh was Dr. Zhang's direct supervisor.

Wexford has held a contract to provide certain medical services at Stateville since 2005. Watkins's medical records while in prison were maintained by the IDOC. In 2006, the medical unit at Stateville was subject to an audit. The audit revealed significant policy lapses in the medical department.

On February 16, 2006, Watkins injured himself at Stateville while lifting weights, causing a back injury (his "back injury"). He did not receive any medical treatment for his back injury on that day. Medical personnel at Stateville had the power to schedule a medical appointment with prisoners to learn of their current conditions. Dr. Ghosh personally examined Watkins for the first time in April 2006.

Pursuant to Dr. Ghosh's April 28, 2006 referral, on June 12, 2006 Watkins underwent a magnetic resonance imaging ("MRI") at the University of Illinois at

Chicago ("UIC"). Around June 12, 2006, Dr. Ghosh received and reviewed the MRI results which stated that there was "evidence of diffuse marrow replacement involving all visualized lower thoracic and lumbosacral vertebrae", and that there was an "L5-S1 posterior central disk herniation resulting in no neural compromise". Watkins was told of his MRI results over two years later on September 16, 2008.

On August 2, 2007, Williams personally treated Watkins. The parties dispute whether Watkins appropriately requested medical attention and which injuries Watkins complained of at the time of his visit with Williams. Watkins claims he complained to Williams about his back pain and she did not provide him with any treatment or pain medication. Williams relies on the medical records which do not show any complaints by Watkins about his back injury when she treated him. On August 5, 2011, Williams examined Watkins again after he complained of lower back pain, numbness, and tingling in his leg. Williams prescribed pain medication.

An inmate may submit a grievance as an emergency grievance, which then is supposed to be signed by the warden's office. Watkins made numerous written requests (approximately thirteen) to be on the "sick call" and filed multiple emergency grievances for medical treatment at Stateville from 2006 to 2011. The parties dispute whether many of these requests and grievances were ever received, whether they were ever time-stamped, when they were received, who received them, and who should have received them.

The record indicates that Watkins filed his first grievance about his back injury on March 14, 2006 and another on July 28, 2008. Watkins also filed a grievance on November 9, 2008 ("November 9, 2008 Grievance") complaining of his back injury, which he later amended twice on November 11, 2008 and November 12, 2008 (collectively the "November 11, 2008 Grievance"). The November 11, 2008 Grievance was not marked as an emergency and was sent to the Stateville grievance office through the normal, non-emergency procedure. The Grievance Office time-stamped the November 11, 2008 Grievance on January 22, 2009. After consulting with Dr. Ghosh and reviewing Watkins's MRI report and medical records, Dr. Zhang wrote a written response to the November 11, 2008 Grievance concluding Watkins was receiving proper care for his lower back pain and that surgery was unnecessary.

The parties disagree on when exactly Watkins received medical treatment after his June 12, 2006 MRI at UIC. The parties dispute the accuracy of his medical records against the credibility of Watkins's deposition testimony. Watkins's medical records show that he was treated on May 2, 2007 for complaints of headaches. Watkins claims in his deposition that he always complained of his back injury when he was treated by any medical personnel, but his back injury is not always noted in his medical records. Watkins's written letters indicate that he was seen multiple times by medical personnel in July and December 2006.

## II. Procedural History

On June 30, 2011 Watkins filed his first amended complaint with this Court pursuant to 42 U.S.C. § 1983 ("Section 1983") against the current Defendants, and Dr. Evaristo Aguinaldo ("Dr. Aguinaldo"), Frank Shaw ("Shaw"), and Kevin Halloran ("Halloran"). Halloran was voluntarily dismissed without prejudice. The Court dismissed all counts against Dr. Aguinaldo and Shaw. On March 12, 2013, after filing grievances with the Illinois Department of Corrections, Watkins filed his second complaint pursuant to Section 1983, renaming Dr. Aguinaldo as a defendant and alleging: (i) deliberate indifference to his back injury in violation of the Eighth Amendment against Dr. Zhang, Dr. Ghosh, Williams, Aguinaldo and McCann (collectively the "individual defendants") in their individual capacities (Count I); (ii) failure to intervene against the individual defendants (Count II); and (iii) inadequate medical treatment by Wexford in violation of the Eighth Amendment (Count III). On July 9, 2013, this Court, for a second time, dismissed both counts against Dr. Aguinaldo. On November 27, 2013, Defendants moved for summary judgment pursuant to Rule 56. Dr. Zhang, Dr. Ghosh, Williams, and Wexford move for summary judgment together, while McCann filed a separate motion for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the movant bears the burden of proof at trial. *Id.* at 325. The non-movant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with documentary evidence. *Id.* A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court construes all facts and draws all reasonable inferences in favor of the non-movant. *Id.* at 255.

## DISCUSSION

### I. Eighth Amendment Violations

#### A. Deliberate Indifference

Watkins alleges that Defendants acted with deliberate indifference to his serious medical needs. This lack of care put him at substantial risk of further harm. Under the Eighth Amendment, prisoners are entitled to adequate medical care. *Estelle*

*v. Gamble*, 429 U.S. 97, 105 (1976).  To survive a motion for summary judgment on an Eighth Amendment claim for denial of appropriate medical care, Watkins must demonstrate that he suffers from an objectively serious medical condition and that a prison official was deliberately indifferent to that condition.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000).  An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Zentmyer v. Kendall Cnty. Ill.*, 220 F.3d 805, 810 (7th Cir. 2000) (citations omitted).  Watkins provides medical evidence to support a finding that he had a serious medical back injury.  While Defendants do not concede that Watkins's back injury constitutes a serious medical condition, they do not dispute it.  *See Roe v. Elyea*, 631 F.3d 843, 861 (7th Cir. 2011) (collecting cases that "demonstrate a broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit").

    Instead, Defendants focus on the second element, arguing that Watkins has failed to demonstrate a genuine issue of fact as to whether Defendants acted with deliberate indifference to his condition.  There is an abundance of recent Seventh Circuit decisions which touch on this issue of deliberate indifference.  Deliberate indifference is a subjective standard—that the defendant acted with a "sufficiently

capable state of mind." *Sherrod*, 223 F.3d at 610. To demonstrate that a defendant acted with a "sufficiently capable state of mind," a plaintiff must set forth evidence to establish that the defendant knew of a serious risk to the prisoner's health and consciously disregarded that risk. *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). It is important to note that "[n]egliegence—even gross negligence—is insufficient to meet this standard, but the plaintiff is not required to show intentional harm." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). The Supreme Court has compared the deliberate indifference standard to that of criminal recklessness. *Farmer*, 511 U.S. at 837.

Specifically, for a medical professional to be held liable under the deliberate indifference standard, he or she must make a decision that is "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Medical professionals might also show deliberate indifference by delaying necessary treatment and thus aggravating the injury or needlessly prolonging an inmate's pain. *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). Delay is not a factor that is either always, or never, significant. Delaying medical treatment may constitute deliberate indifference, depending on the seriousness of the condition and the ease of providing treatment. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). "Even a few days' delay in addressing a severely painful but readily treatable condition suffices to

state a claim of deliberate indifference." *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012).

Watkins posits his deliberate indifference claim against Defendants on: (i) the delay in medical treatment after his June 12, 2006 MRI; (ii) the delay in receiving his MRI results; and (iii) the lack of response to his complaints about follow-up treatment for his back injury.

### B. Failure to Intervene

Watkins also claims that Dr. Zhang, Dr. Ghosh, Williams, and McCann violated his constitutional rights by failing to intervene. The Seventh Circuit acknowledges a "failure to intervene" basis for a constitutional violation under the Eighth Amendment. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). A failure to intervene claim requires evidence of the following: (i) the defendant knew of the unconstitutional conduct; (ii) the defendant had a realistic opportunity to prevent the harm; (iii) the defendant failed to take reasonable steps to prevent the harm; and (iv) the plaintiff suffered harm as a result. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Failure to intervene liability is not limited to the context of excessive force cases or to employees within the same governmental entity. *Windle v. City of Marion,* 321 F.3d 658, 663 (7th Cir. 2003). On the other hand, it is "not so broad as to place a responsibility on every government employee to intervene in the acts of all other government employees." *Id.* Rather, there must be some particular connection or relationship between the government employees or entities such that the duty to

intervene arises. *Winchester v. Marketti*, No. 11 C 9224, 2012 WL 2076375 (N.D. Ill. June 8, 2012).

## II. Medical Defendants

### A. Deliberate Indifference of Dr. Ghosh

This Court must determine if there are genuine issues of material fact as to whether Dr. Ghosh acted with deliberate indifference towards Watkins's back injury. Viewing the facts in a light most favorable to Watkins, this Court finds that a reasonable jury could infer that Dr. Ghosh, as Medical Director of Stateville, acted with deliberate indifference towards Watkins's back injury. There are definite questions as to: (i) when exactly Watkins was treated after his June 12, 2006 MRI; (ii) why it took over two years for him to receive his MRI results from Dr. Ghosh; and (iii) whether Dr. Ghosh received Watkins's written requests and grievances and failed to respond to them in the appropriate manner. Although one can argue that Watkins's back injury lacked the same severity as other prisoner's injuries cited to by the Seventh Circuit in *Burns v. Fenoglio*, the length of Dr. Ghosh's delays defeats summary judgment. 525 F. App'x 512, 515 (7th Cir. 2013) (collecting cases).

Concerning Watkins's delay in treatment after his MRI and the lack of response to alleged written requests, Watkins states in his deposition that he did not receive any type of medical care for approximately one year after his MRI although he made written requests for treatment numerous times. Defendants disagree, stating that an informal letter is an improper request for medical care and that there is no evidence

that these requests were ever sent or received since they lacked time-stamps. At a minimum, these facts present a genuine dispute as to whether Dr. Ghosh knew of and disregarded a substantial risk of harm to Watkins. This Court finds that a reasonable jury could find that the delay in treatment by Dr. Ghosh of Watkins's back injury could be considered a departure from accepted professional practice of a medical doctor since Dr. Ghosh could have provided Watkins with easily obtainable relief like over-the-counter pain medication.

Regarding the delay in Watkins receiving his MRI results, which found "central disk herniation resulting in no neural compromise", the initial question of fact lies in whether or not a reasonable medical doctor at a prison would have provided Watkins with his MRI results earlier than two years after the MRI, even though the herniation did not require surgery. Additionally, this Court finds that a reasonable jury could conclude that the two years it took Watkins to receive the results constitutes deliberate indifference on the part of Dr. Ghosh especially since Watkins's pain from his herniated disk could have been readily treatable with medication or minimal physical therapy during the time it took him to receive his results. Therefore, Dr. Ghosh's motion on this ground is denied.

**B. Deliberate Indifference of Williams**

Watkins asserts that Williams acted with deliberate indifference towards his back injury. The above analysis in Part A, *supra*, also applies to Williams, as a medical treater of Watkins. Physician's assistants may generally defer to instructions

given by a physician, "but that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient." *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010). If a physician's assistant "ignore[s] obvious risks to inmate's health", she may be acting with deliberate indifference. *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 683 (7th Cir. 2012). Yet, "a prisoner is not required to show that he was literally ignored." *Sherrod*, 223 F.3d at 611.

During the period where Watkins complains of mistreatment, Williams saw him on several occasions. At his August 2007 visit with Williams, Watkins was not given any treatment or pain medication although he states in his deposition that he adamantly requested both and told Williams that he had undergone an MRI but was not yet made aware of the results. The medical records written and signed by Williams do not make any mention of a back injury. After his August 2007 visit, Watkins claims that he submitted frequent requests, both formal and informal, for medical attention. Williams's name can also be found on multiple grievances within the record. Again, it is disputed as to whether these grievances were actually received and by whom. Williams did provide Watkins with pain medication in August 2011.

Defendants point to evidence that Watkins received adequate medical treatment, especially when Williams treated him in August 2011 and gave him pain medication for his back injury. However, as a physician's assistant, Williams had the ability to review Watkins's complaints, whether sent in an official or unofficial

manner, especially the ones where Watkins named her directly. Evidence that Williams ignored these letters, complaints, and could have made Watkins aware of his MRI results are isolated incidents, but, if proven, sufficiently establish that Williams's treatment or lack thereof substantially deviated from accepted medical practice. Hence, Williams's motion for summary judgment as to Count I is denied.

### C. Failure to Intervene of Dr. Ghosh and Williams

Watkins has also alleged that both Dr. Ghosh and Williams failed to intervene and failed to take reasonable steps to prevent the constitutional harm against him from occurring. As his main medical treaters, Watkins provides sufficient evidence to establish that a reasonable jury could find that Dr. Ghosh and Williams knew Watkins's constitutional rights were being violated when they ignored the numerous written requests and grievances he filed with the medical department, both formally and informally. The record also indicates that as medical professionals, Dr. Ghosh and Williams had the ability to request for Watkins to at least be put on the "sick call" or schedule an appointment to learn of his current medical condition. As a result of this alleged misconduct, Watkins suffered harm, thus satisfying a failure to intervene claim for a jury to consider. Summary judgment as to Dr. Ghosh and Williams is denied.

### D. Dr. Zhang

With respect to Dr. Zhang, Watkins asserts allegations of deliberate indifference and failure to intervene. The parties do not dispute whether Dr. Zhang

- 13 -

personally examined or treated Watkins. Dr. Zhang never had any conversations or communications with Watkins except for the fact that on December 29, 2008, Dr. Zhang authored a memorandum stating that she had read the November 11, 2008 Grievance. After speaking with Dr. Ghosh and reviewing Watkins's medical records, Dr. Zhang determined that Watkins was receiving proper care for his lower back pain and that surgery was not necessary at that time. This is Dr. Zhang's only connection with Watkins's current lawsuit. The parties dispute whether Dr. Zhang read the November 9, 2008 Grievance in conjunction with the November 11, 2008 Grievance.

For the deliberate indifference claim, to satisfy the personal involvement requirement it is true that direct participation is not necessary, though "there must at least be a showing that the [official] acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003) (citing *Kelly v. Mun. Courts of Marion Cnty., Ind.*, 97 F.3d 902, 909 (7th Cir. 1996)). This Court finds insufficient evidence from which a jury could reasonably conclude that Dr. Zhang was deliberately indifferent to Watkins's needs. Beyond the one-month delay to review his November 11, 2008 Grievance, there is no evidence that Dr Zhang improperly violated Watkins's constitutional rights by intentionally disregarding his health risks. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("[D]elay could support a deliberate-indifference claim if [Dr. Zhang] was aware of the severity of [Watkins's health] problems yet refused to approve [treatment]."). Dr. Zhang reasonably responded to the November 11, 2008 Grievance

by consulting with Dr. Ghosh, her supervisor, and then concluding that surgery was unnecessary after reviewing Watkins's MRI report and medical records. Her deference to Dr. Ghosh's instructions does not constitute ignorance to obvious risks to Watkins's health.

Likewise, this Court finds that the requirements for a failure to intervene claim against Dr. Zhang have not been satisfied. Dr. Zhang followed protocol when she approached Dr. Ghosh about how to handle Watkins's complaints. Nothing in the record indicates that Dr. Zhang knew that Watkins may have been a victim of unconstitutional conduct. Also, her conduct establishes that she did indeed take reasonable steps to prevent harm to Watkins by reviewing his records and seeking advice from Dr. Ghosh on how to proceed. Because Watkins has not established that Dr. Zhang acted with deliberate indifference to his back injury, the failure to intervene claim against her also fails. *See Harper*, 400 F.3d at 1064 ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation."). Summary judgment is thus granted on both counts as to Dr. Zhang.

### III. McCann

McCann argues that Watkins cannot establish that he acted with deliberate indifference to Watkins's back injury. Typically, non-medical defendants, like McCann, are insulated from liability if they reasonably rely on the judgment of medical professionals. *Johnson*, 433 F.3d at 1010-11. If the non-medical defendant

- 15 -

has reason to believe, or actual knowledge, that prison doctors are mistreating or not treating a prisoner, that protection disappears. *Id.*; *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (liability of a warden does arise "if the conduct causing the constitutional deprivation occurs at [the prison official's] direction or with [his] knowledge and consent."). It is sufficient if the warden knows about the conduct and facilitates, approves, condones, or turns a blind eye to it. *Martinez v. Garcia*, No. 08 C 2601, 2012 WL 266352 (N.D. Ill. Jan. 30, 2012) (citing *Gentry*, 65 F.3d at 561). A warden "cannot simply ignore an inmate's plight" when he has notice that there is a risk to a prisoner's health. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011).

Although this Court acknowledges the audit conducted by the State of Illinois during McCann's tenure as warden and its findings about the policy lapses in the medical department, there is not enough evidence to establish that McCann was put on notice from the one emergency grievance Watkins claims McCann should have personally read. Unlike *Martinez*, no evidence exists that Watkins sent a personal letter or met in-person with McCann like the prisoner in that case. Similarly, the instant case is distinguishable from the case Watkins cites, *Flournoy v. Ghosh*, 881 F. Supp. 2d 980 (N.D. Ill. 2012), because the emergency grievance at issue here did not bear McCann's signature. Also, unlike in *Flournoy*, Watkins's request for back treatment required medical judgment, distinct from the filling of the prisoner's prescription in *Flournoy*. Thus, there is not enough evidence in this specific case to

convince the Court that McCann intentionally ignored Watkins' grievance or had notice that the medical unit was ignoring Watkins's requests for treatment.

Also, like Dr. Zhang, Watkins's failure to intervene allegation against McCann fails. With no underlying constitutional violation, McCann cannot be liable for an alleged failure to intervene. Accordingly, the Court grants McCann's summary judgment motion as to both counts.

## IV. Wexford

Watkins avers that Wexford is liable for its policies and practices that resulted in his inadequate care. A corporate entity is liable for constitutional violations under Section 1983 "if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners." *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 530 (7th Cir. 2000) (quoting *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998)). A plaintiff does not need to establish that the corporation's actions were taken pursuant to an official policy, but can show that a series of bad acts which allows the court to infer that the defendant was bound to have noticed the conduct, "and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers." *Estate of Novack*, 226 F.3d at 531. A corporation acting under color of law can also violate a prisoner's constitutional rights when it should know that its employees are ignoring written policies, or when it has no written policy in the first place. *See Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 929 (7th

Cir. 2004). Recent case law is particularly full of allegations from prisoners about Wexford's unconstitutional policies and practices, specifically with how Wexford constantly ignored complaints, letters, and grievances because of such problems as understaffing employees.

Watkins asserts that Wexford's unconstitutional practices were widespread—that it failed to comply with and ignored its own written policies, it understaffed the medical unit at Stateville, and it showed deliberate indifference to him by not referring him to be treated at an off-site medical facility. As the provider of medical treatment, this Court finds that Wexford would have been privy to the 2006 audit of Stateville's medical unit which revealed significant policy issues. Watkins presents evidence that these employees failed to follow Wexford's prisoner complaint procedure in a timely fashion. This Court has already found that a reasonable jury could find Dr. Ghosh and Williams, employees and "subordinate officers" of Wexford, deliberately indifferent when they engaged in a series of bad acts by ignoring Watkins's written requests for treatment, *inter alia*, which a fact-finder could infer Wexford was bound to have noticed, and subsequently "encouraged". This is enough to show that the alleged deprivation was a result of an existing policy, rather than an isolated incident. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1071 (7th Cir. 2012).

## CONCLUSION

For the foregoing reasons, the Court grants summary judgment with respect to Dr. Zhang and McCann, and denies summary judgment as to Dr. Ghosh, Williams, and Wexford.

*Charles P. Kocoras*
_____
Charles P. Kocoras
United States District Judge

March 4, 2014
Dated: _____